**ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.**
875 Third Avenue
New York, New York 10022
Fred B. Ringel
Lori Schwartz
*Proposed Attorneys for the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

In re:

**85 FLATBUSH RHO MEZZ LLC,
85 FLATBUSH RHO HOTEL LLC, and
85 FLATBUSH RESIDENTIAL LLC**,

                    Debtors.
-----------------------------------------------------------X

Chapter 11

Case Nos.:  20-23280-rdd,
20-23281-rdd and 20-23282-rdd

(Joint Administration Requested)

## DEBTORS' MOTION (I) APPROVING DEBTORS' PROPOSED FORM OF ADEQUATE ASSURANCE OF PAYMENT, (II) ESTABLISHING PROCEDURES FOR RESOLVING OBJECTIONS BY UTILITY COMPANIES AND (III) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICE

        85 Flatbush RHO Mezz LLC ("Mezz"), 85 Flatbush RHO Hotel LLC ("Hotel") and 85 Flatbush RHO Residential LLC ("Residential", and defined together with Mezz and Hotel, as the "Debtors"), hereby submit this motion (the "Motion") for an order (i) approving the Debtors' proposed form of adequate assurance of post-petition payment to the Utility Companies (as defined herein); (ii) establishing procedures for resolving any objections by the Utility Companies relating to the Proposed Adequate Assurance (as defined herein); and (iii) prohibiting the Utility Companies from altering, refusing or discontinuing service to, or discriminating against, the Debtors solely on the basis of the commencement of this Chapter 11 case.  In support of the Motion, the Debtors respectfully represent as follows:

## BACKGROUND

1. On December 18, 2020 (the "Petition Date"), the Debtors commenced their Chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2. The Debtors are operating their businesses and managing their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the filing of this motion, no trustee, examiner or committee has been requested or appointed.

3. Mezz is the 100% owner of Hotel and Residential. Hotel and Residential collectively own the property located at 85 Flatbush Extension, Brooklyn, New York, (the "Property"). The Property is a 132,641 square foot, twelve-story, mixed use property consisting of a 174 room boutique hotel on the first 6 floors known as the Tillary Hotel Brooklyn, a 58,652 square foot 64-unit luxury multi-family building and a 5,642 square foot parking garage. The residential component of the Property has 9 studios, 26 one-bedroom units and 29 two-bedroom units. Of the 64 units, currently five (5) are occupied. The intention is to convert the residential component into condominiums.

4. The COVID-19 pandemic and the attendant travel restrictions and quarantine requirements along with the NYC shutdown of indoor dining beginning in March 2020 had an immediate impact on the hospitality industry as a whole and caused the Hotel to shut down operations entirely for the month of April 2020. The Hotel reopened to provide homeless shelter services from May 15, 2020 through June 30, 2020. The Hotel reopened to the public on July 15, 2020 and remains open, but with a substantially reduced occupancy rate, resulting in limited revenue. As a result, Mezz, Hotel and Residential have been unable to pay their current debt service obligations to their secured lenders.

## RELIEF REQUESTED

5. In connection with the operation of their business, the Debtors obtain gas and electricity and similar utility services (collectively, the "Utility Services") from individual utility companies as that term is used in Section 366 of the Bankruptcy Code and are listed on **Exhibit A** annexed hereto (the "Utility Companies").[1]

6. On average, before the Petition Date, the Debtors spent approximately $24,000 per month for Utility Services.

7. Currently, Con Edison holds a deposit of approximately $6,000.

8. It is axiomatic that uninterrupted Utility Services are essential to the Debtors' business operations. Should any Utility Company alter, refuse or discontinue service, even for a brief period, the operations of the Debtors' Property will be disrupted as the Debtors would be unable to deliver services at the building, and the tenants' lives would be severely disrupted. Thus, the Debtors fully intend to pay all undisputed post-petition obligations owed to the Utility Companies in a timely manner and to provide adequate assurance of future performance consistent with the mandate of Section 366 by establishing a new set of deposits, to the extent the Court requires so that the utilities will have a total of 14 days average usage as security based on the account established by the Debtors.

9. Specifically, no later than two (2) business day after the entry of the annexed proposed order, the Debtors will establish an interest-bearing account (the "Utility Deposit Account") for all the Utility Companies and place a deposit of $12,000 available to the Utility Companies and equal to 14 days of average usage (the "Utility Deposit").

---

[1] The name listed on the accounts for the Utility Companies is 85 Flatbush LLC, the previous owner of the Debtors' businesses. Upon the acquisition of the business by the Debtors, the Debtors in an effort to maintain continuity continued to use the same accounts as their predecessor. The Debtors are currently in the process of transitioning these accounts to a new account in their names, but out of an abundance of caution are filing this Motion with respect to these prepetition accounts.

10. The Debtors project that the aggregate Utility Deposit for all Utilities will be in the amount of $12,000 based on average monthly charges in the amount of $24,000.

11. The Debtors submit that the Utility Deposit is sufficient to constitute adequate assurance to the Utility Companies (the "Proposed Adequate Assurance"). Accordingly, upon entry of the Order, any Utility Company that either (i) fails to request additional adequate assurance (an "Additional Assurance Request") or (ii) files an Objection (as defined below) to the Motion shall be deemed to have consented to the proposed adequate assurance of payment as required by section 366 of the Bankruptcy Code and shall be prohibited from altering, refusing or discontinuing Utility Services, including as a result of unpaid prepetition charges. In addition, such Utility Company will further be deemed to have waived any right to seek additional adequate assurance during the Debtors' Chapter 11 Cases, except as provided in section 366(c)(3) of the Bankruptcy Code.

12. A Utility Company which believes that the Debtors are required to provide additional adequate assurance must make an Additional Assurance Request under the procedures described below (the "Adequate Assurance Procedures"):

    a) Within three business days after the date of entry of the Order, the Debtors shall mail a copy of this Order, together with the Utility Company List, to the Utility Companies.

    b) If a Utility Company is not satisfied with the Proposed Adequate Assurance and seeks additional adequate assurance of payment, it must, within 20 days after entry of the Order, serve an Additional Assurance Request upon (i) Robinson Brog Leinwand Greene Genovese & Gluck P.C., 875 Third Avenue, 9th Floor, New York, New York 10022 attn: Fred B. Ringel, Esq.; and (ii) the Office of the United States Trustee, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Andrea Schwartz, Esq; and (vi) counsel to any statutory committee appointed in this case (the "Adequate Assurance Notice Parties").

    c) Each Additional Assurance Request must (i) be in writing; (ii) set forth the amount and form of additional assurance of payment requested; (iii) set forth the type of Utility Services, any account numbers, and the location for which Utility Services are provided; (iv) include a

|     |     |
| --- | --- |
|     | summary of the Debtors' payment history to such Utility Company, including whether the Utility Company holds any deposits or other security, and if so, in what amount; and (v) set forth why the Utility Company believes the Proposed Adequate Assurance is not sufficient adequate assurance of payment. |
| d)  | Upon the Debtors' receipt of an Additional Assurance Request, the Debtors shall have twenty (20) days from the receipt of such Additional Adequate Assurance Request (the "Resolution Period") to negotiate with such Utility Company to resolve such Utility Company's request for additional assurance of payment. |
| e)  | The Debtors may resolve any Additional Assurance Request, Objection, or Determination Motion (as defined below) by mutual agreement with the Utility Company and may, in connection with any such agreement, in their sole discretion, modify the amount contributed to the Utility Deposit Account for the benefit of such Utility Company or provide the Utility Company with an alternative form of adequate assurance of payment, without further order of this Court, if the Debtors believe such additional assurance is reasonable; provided, however, that the Debtors shall maintain a summary record of such agreements and their respective terms, and such summary record and the agreements themselves shall be available to any official committee appointed in the case and the Office of the United States Trustee for the Southern District of New York upon demand. |
| f)  | Upon the Debtors' receipt of an Additional Assurance Request, the Debtors may, at their discretion and without further order of this Court, have an option to resolve the Additional Assurance Request by paying the Utility Company, in advance, an amount equal to the preceding one (1) month of the Utility Services (the "Advance Payment") and, simultaneously reducing the Utility Deposit Account by the amount of the Utility Deposit that was deposited in the Utility Deposit Account for such Utility Company. |
| g)  | Should the Debtors elect not to make the Advance Payment and be unable to reach a mutual resolution with respect to an Adequate Assurance Request within the Resolution Period, the Debtors shall (and the Utility Company may) file a motion with the Court seeking a hearing to determine the adequacy of assurance of payment with respect to a particular Utility Company (the "Determination Motion") with the Court and, if the Determination Motion is not withdrawn, the Court will determine the adequacy of the Proposed Adequate Assurance with respect to that Utility Company; provided, however, that nothing herein shall prejudice a Utility Company's right to seek emergency relief. |

## **LEGAL BASIS FOR RELIEF**

13. Section 366(c) of the Bankruptcy Code defines "assurance of payment" to mean

certain specified forms of security, without abrogating the Court's power to determine what specific amount is necessary to provide adequate assurance of payment to a utility company. *See In re The Great Atl. & Pac. Tea Co., Inc.*, 2011 WL 5546954, at *4 (S.D.N.Y. Nov. 14, 2011).

14. For the reasons set forth below, the Utility Providers will be adequately assured of payment for future services by the relief requested herein. Congress enacted section 366 of the Bankruptcy Code to protect debtors from utility service cutoffs upon a bankruptcy filing while providing utility companies with adequate assurance that the debtors would pay for post-petition services. *See* H.R. Rep. No. 95-595, at 350 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6306. Accordingly, section 366 of the Bankruptcy Code protects debtors by prohibiting utilities from altering, refusing, or discontinuing services to a debtor solely on account of unpaid prepetition amounts for 30 days after a chapter 11 filing. At the same time, section 366 protects utilities by permitting them to alter, refuse or discontinue service after 30 days if the debtor has not furnished "adequate assurance" of payment in a form "satisfactory" to the utility.

15. Amendments to the Bankruptcy Code did not abolish the bankruptcy court's ability to determine the amount of adequate assurance necessary or change the fundamental requirement that assurance of payment must be "adequate." Thus, while section 366(c) of the Bankruptcy Code limits the factors a court may consider when determining whether a debtor has provided adequate assurance of payment, it does not limit the court's ability to determine the amount of payment necessary, if any, to provide adequate assurance. Section 366(c) of the Bankruptcy Code gives courts the same discretion in determining the amount of payment necessary for adequate assurance that they previously had. Compare 11 U.S.C. § 366(b) (2005) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.") with 11 U.S.C. § 366(c)(3)(A) (2005) ("On request of a party in interest and after notice and a hearing, the court may

order modification of the amount of an assurance payment under paragraph (2).").

16. In addition, it is well established that section 366(b) of the Bankruptcy Code permits a court to find that no adequate assurance payment at all is necessary to provide a utility with adequate assurance of payment. *See Va. Elec. & Power Co. v. Caldor Inc.*, 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted narrowly, . . . a bankruptcy court's authority to 'modify' the level of the 'deposit or other security' provided for under § 366(b), includes the power to require 'no deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'"). This principle may be applicable in cases where the debtor has made prepetition deposits or prepayments for services that utility providers ultimately will render post-petition. *See* 11 U.S.C. § 366(c)(1)(A)(v) (recognizing a prepayment for post-petition services as adequate assurance). Accordingly, courts may exercise their discretion in determining the adequacy of assurance payments and even whether such payments are necessary at all.

17. Finally, section 366(c) only requires that a utility's assurance of payment be "adequate." Courts recognize that adequate assurance of performance does not constitute an absolute guarantee of a debtor's ability to pay. *See*, *e.g.*, *In re Steinebach*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance . . . 'a Bankruptcy Court is not required to give a utility company the equivalent of a guarantee of payment, but must only determine that the utility is not subject to any unreasonable risk of nonpayment for post-petition services.'") (quoting *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002)); *see also In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) (section 366(b) "does not require an 'absolute guarantee of payment'") (citation omitted), *aff'd sub nom. Va. Elec. & Power Co., v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997).

18. Courts also have recognized that, in determining the requisite level of adequate

assurance, bankruptcy courts should "focus 'upon the need of the utility for assurance, and to require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.'" *Va. Elec. & Power Co.*, 117 F.3d at 650 (emphasis in original); *see also In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103-04 (3d Cir. 1972) (affirming bankruptcy court's ruling that utility deposits were not necessary where such deposits likely would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already are reasonably protected"). Accordingly, demands by a Utility Provider for a guarantee of payment should be refused when the Debtors' specific circumstances already afford adequate assurance of payment.

19.     Here, the Debtors' proposal to essentially establish a deposit equal to a half month of the regular charges provides the Utility Companies with much more protection than they currently have since most of the Debtors' accounts do not have deposits, to begin with. If a Utility Company disagrees, the Debtors have proposed an additional process to resolve any dispute while preserving the Debtors' ability to operate. In light of the foregoing, the Debtors respectfully submit that the Proposed Adequate Assurance is more than sufficient to assure the Utility Providers of future payment

## IMMEDIATE RELIEF AND WAIVER OF STAY IS NECESSARY TO AVOID IRREPARABLE HARM

20.     Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm," which as noted above, is the impetus for this Motion. Absent the approval of the Adequate Assurance Procedures, Utility Providers could discontinue service, without warning, twenty (20) days from the Petition Date, if they claim they have not yet received a "satisfactory" adequate assurance payment. Under the Adequate Assurance Procedures, however, any Utility Provider that fails to file a timely Additional Assurance Request shall be deemed to consent to the Adequate Assurance Procedures

and shall be bound by the Proposed Order. *See In re Syroco, Inc.*, 374 B.R. 60, 62 (Bankr. D.P.R. Aug. 22, 2007) (a utility provider's lack of objection, response or counter-demand after receiving notice of hearing on a utilities motion, notice of interim order and notice of final hearing constitutes tacit acceptance of the debtor's proposed two-week cash deposit as adequate assurance of payment as such term is used in section 366 of the Bankruptcy Code). Accordingly, the relief sought should go into effect immediately to avoid immediate and irreparable harm to the Debtors and their estates.

21.     Consistent with Bankruptcy Rule 6003, the Debtors also request that the Court waive any stay imposed by Bankruptcy Rule 6004(h), to the extent the same may be deemed applicable, which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." For the reasons set forth herein, the waiver of the stay is necessary for the Debtors to operate their business without interruption and to preserve asset values for creditors.

## NOTICE

22.     Notice of this Motion has or will be given to: (i) the Office of the United States Trustee; (ii) Debtors' list of their twenty (20) largest unsecured creditors and (iii) any such other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Bankruptcy Rule for the Southern District of New York 9013-1(b).

23.     The Debtors are serving this Motion to be presented to the Court on January 4, 2020. To the extent an objection is filed to the Motion that cannot be resolved by the presentment date, the Debtors reserve the right to submit a bridge order extending the time during which the Utility Companies are prohibited from discontinuing utility services and otherwise reserving all parties' rights under section 366 of the Bankruptcy Code until a hearing can be scheduled.

## NO PRIOR REQUEST

24.   No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

**Dated:**  New York, New York
December 18, 2020

                **ROBINSON BROG LEINWAND GREENE
                 GENOVESE & GLUCK P.C.
                Proposed Attorneys for the Debtors**
                875 Third Avenue
                New York, New York 10022
                212-603-6300

                By:  /s/  Fred B. Ringel
                      Fred B. Ringel
                      Lori Schwartz