**ROBINSON BROG LEINWAND GREENE**
**GENOVESE & GLUCK P.C.**
875 Third Avenue
New York, New York 10022
Fred B. Ringel
Lori Schwartz
*Proposed Attorneys for the Debtor and Debtor in*
*Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------X

In re:

**85 FLATBUSH RHO MEZZ LLC,**
**85 FLATBUSH RHO HOTEL LLC, and**
**85 FLATBUSH RESIDENTIAL LLC**,

Debtors.
----------------------------------------------------------X

Chapter 11

Case Nos.:  20-23280-rdd through
20-23282-rdd

(Joint Administration Requested)

**DEBTOR'S MOTION TO USE 85**
**FLATBUSH AVENUE 1 LLC'S CASH COLLATERAL**

**TO THE HONORABLE ROBERT D. DRAIN**
**UNITED STATES BANKRUPTCY JUDGE:**

85 Flatbush RHO Hotel LLC., debtor and debtor -in- possession (the " Debtor"), by its

proposed attorneys Robinson Brog Leinwand Greene Genovese & Gluck P.C., hereby submits

this motion (the "Cash Collateral Motion") for an order pursuant to § 363(c)(2)(B) and 506(c)

of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001(b) of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking the entry of an order  (A)

authorizing the Debtor to use cash collateral as that term is defined in §363(a) of the

Bankruptcy Code (the "Cash Collateral") on an interim basis in accordance with the Budget

(the "Budget") annexed hereto as Exhibit "A", pending  a final hearing, (B) granting adequate

protection to 85 Flatbush Avenue 1 LLC (the "Lender") and (C) scheduling a final hearing

{01082580.DOCX;5 }

pursuant to Bankruptcy Rule 4001.  In support of the Cash Collateral Motion, the Debtor sets

forth and alleges as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction over this application is vested in the United States District Court for

this District pursuant to Sections 1334 of Title 28 of the United States Code (the "Judicial

Code").

2.      This application has been referred to this Court for consideration pursuant to

Section 157 of the Judicial Code and the *Standing Order of Reference Regarding Title 11*

(S.D.N.Y. Feb 1, 2012) (Preska The, C.J.).

3.      This is a core proceeding arising under title 11 of the United States Code. *See* 28

U.S.C. §§157(b)(2). statutory predicate for the relief sought herein is Bankruptcy Code Section

363 and Rule 4001 of the Bankruptcy Rules.

4.      Venue of this motion in this district is proper pursuant to Section 1409 of the

Judicial Code.

5.      No trustee, examiner or creditors committee has been appointed in these cases.

6.      The Debtor is in possession of its assets and is continuing to manage its property

in accordance with sections 1107 and 1108 of the Bankruptcy Code.

## BACKGROUND

7.      On December 18, 2020 (the "Petition Date") the Debtor and certain of its

affiliates filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

8.      The Debtor is a limited liability company organized under the laws of the State of

Delaware.  The Debtor owns and operates the Tillary Hotel Brooklyn, a 174 room boutique hotel

located at 85 Flatbush Avenue Extension, Brooklyn, New York located  at the intersection of

Tillary Street and Flatbush Extension, just off the base of the Manhattan Bridge (the "Hotel").

The property is a 12-story mixed use property consisting of the Hotel, a 64 unit luxury multifamily building and a parking garage (the "Property"). The Hotel operates from the first 6 floors of the Property. The Hotel is a full service upper upscale boutique hotel which also features a business center, fitness center, meeting space, restaurant, café and bar. The Debtor is the fee owner of the 6 floors it occupies, and 85 Flatbush RHO Residential LLC ("Residential") owns the other 6 floors. Hotel and Residential are co-obligors on a $70,000,000 loan from 85 Flatbush Avenue 1 LLC (the "Lender") which is secured on substantially all of the Debtors' assets, including the Property.

9.      Debtor and Residential acquired the Property on September 19, 2019.

10.     The COVID-19 pandemic forced the Hotel to close for the entire month of April 2020. From May 15, 2020 until June 30, 2020, the Hotel provided homeless shelter services pursuant to an agreement with the NYC Department of Homeless Services which provided the Debtor with some operating income. As of July 15, 2020, the Hotel reopened for business but with a substantially reduced occupancy rate and the closure of its fitness center, meeting room and food service. The hotel currently continues to operate, with 22 employees on payroll, including those essential to maintaining and securing the Hotel.

11.     The Debtor incorporates the declaration filed, pursuant to Local Bankruptcy Rule l007-2, for additional background related to the Debtor, its affiliates and the goals of the Debtor's chapter 11 case.

**THE MORTGAGE LOAN**

12.     On September 19, 2019, Lender, through an assignment of mortgage from CMTG JP Finance, extended to the Debtor and Residential a loan in the original principal amount of $57,500,000 plus a new advance in the amount of $12,500,000 for a total loan amount of $70,000,000 evidenced by a consolidated, amended and restated note and consolidated, amended

and restated mortgage and security agreement (the "Loan Agreement")  The Loan term is for 24 months, interest only, with a maturity date of October 21, 2021. The Debtor made regular monthly payments of interest on the Loan until February 2020.  Interest arrears are $5,236,000, exclusive of default interest.  As of the Petition Date, the Debtor owes Lender not less than $70,000,000 in the principal amount of the Loan.   The Loan has been, and is currently, accruing interest at the default rate under the Loan Agreement.

13.     The Loan is secured by substantially all of the Debtor's assets including, amongst other things, the Debtor's interest in the Property, fixtures, equipment and other leases, the proceeds, rents and products of the foregoing.

## DEBTOR'S NEED TO USE CASH COLLATERAL

14.     By this Motion, the Debtor seeks authorization from this Court to utilize Lender's cash collateral in order to continue its operations during this chapter 11 case.

15.     Currently, the Debtor has insufficient cash, absent use of Lender's Cash Collateral to meet their ongoing obligations necessary to maintain and operate the Hotel.

16.     The Debtor seeks to use Lender's cash collateral to pay for ordinary expenses such as utilities, taxes, insurance, and maintenance for the Property.

17.     The consequences of leaving the Debtor without access to the Cash Collateral and the anticipated Hotel revenue income will have a materially adverse effect on the Debtor's ability to reorganize its financial affairs and will adversely affect the Debtor and its creditors.

18.      A thirteen (13) week cash flow projection is annexed hereto as Exhibit "A."

19.     Subsequent to the Petition Date, Debtor's counsel has initiated what it hopes will be productive discussions with Lender regarding the use of its cash collateral on a consensual basis.

## ADEQUATE PROTECTION

20.     At the time of acquisition of the Property, there was a substantial equity cushion. The appraised value of the Property was in excess of $94 million and the acquisition debt was $76 million. Since the valuation of the Debtor's assets are subject to a later determination by the Court, the Debtor proposes that it will use the Lender's Cash Collateral to (a) maintain the value of the Property though payment of the normal monthly operating expenses substantially in accord with the Budget, (b) maintain the cash it collects over and above its expenditures in its debtor in possession account pending further order of this Court, and (c) to the extent that the Lender does not have a post-petition security interest in the Debtor's post-petition assets, grant the Lender a security interest in such assets to the extent of any diminution of Cash Collateral (subject and subordinate to, *inter alia*, the fees of the United States Trustee and the professional fees of the Debtor's professionals).  The foregoing, the Debtor believes, adequately protects the Lender's claim.

21.     Based on the foregoing, the proposed adequate protection granted to the Lender is both fair and reasonable, and sufficient to satisfy the requirements of the Bankruptcy Code.

## RELIEF REQUESTED

22.      The Debtor seeks entry of an Order authorizing the Debtor's use of Cash Collateral in accordance with the Budget and under the terms and conditions set forth herein, granting the Lender the adequate protection described above, and setting a final hearing pursuant to Bankruptcy Rule 4001.

23.     Accordingly, pursuant to §§363(c)(2) and 506(c) of the Bankruptcy Code and Rule 4001(b) of the Bankruptcy Rules, the Debtor seeks the entry of an interim order authorizing the Debtor to use Cash Collateral and such other and further relief as is appropriate.

## REQUEST FOR RELIEF UNDER §506(c)

24.     Absent the use of Cash Collateral to pay the operating expenses of the Hotel, the Debtor submits that the value of the Property and the Lender's collateral will decline.  Moreover, the inability to make timely payment of post-petition services will erode, if not eliminate, the Debtor's ability to reorganize.  The payment of the reasonable operating expenses listed on the Budget is therefore necessary to preserve the Debtor's estate and fund its reorganization.  Accordingly, the Court should authorize the Debtor to expend the Lender's Cash Collateral to maintain Hotel operations and to preserve the Property under section 506(c) of the Bankruptcy Code.

**THE DEBTOR REQUIRES IMMEDIATE ACCESS TO THE CASH COLLATERAL**

25.     The Court may grant interim relief in respect of a motion filed pursuant to section 363(c) or 364 of the Bankruptcy Code where, as here, interim relief is "necessary to avoid immediate and irreparable harm to the estate pending a final hearing." FED. R. BANKR. P.4001(b)(2), (c)(2).   In examining requests for interim relief under this rule, courts in this jurisdiction generally apply the same business judgment standard applicable to other business decisions. *In re Ames Dept. Stores,* 115 B.R. 34, 36 (Bankr. S.D.N.Y. 1990).

26.     The Debtor and its estate will suffer immediate and irreparable harm if the interim relief requested herein, including authorizing the Debtor's ability to use Cash Collateral on an interim basis pending a final hearing is not granted promptly after the filing of this Cash Collateral Motion. The Debtor has insufficient cash to fund operations without immediate access to their Cash Collateral.  Accordingly, the Debtor has an immediate need for access to liquidity to, among other things, continue the operation of the Hotel, maintain their relationships with their vendors, employees and guests, and otherwise satisfy operational needs for the Hotel, all of which is required to preserve and maintain the Debtor's value for the benefit of all parties in interest.

**IF THE DEBTOR IS AUTHORIZED TO USE LENDER'S CASH
COLLATERAL, ALL CONSTITUENTS, INCLUDING LENDER, WILL
BENEFIT AND LENDER  WILL BE ADEQUATELY PROTECTED**

27.     Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use cash collateral unless each entity that has an interest in such cash collateral consents or the Court, after notice and a hearing, authorizes the use of cash collateral.  Although the Debtor fully intnds to focus its immediate efforts post-petition on negotiating the consensual use of Cash Collateral, the Debtor is filing this Cash Collateral Motion to obtain a prompt post-petition hearing to request entry of an interim Cash Collateral order.

28.     Since the Debtor does not currently have Lender's express consent to use cash collateral at this time, the Debtor seeks authorization from this Court to use Lender's Cash Collateral.  Due to the Hotel operating on a limited basis as a result of the COVID-19 pandemic, it currently has limited revenue.  In order to adequately protect the Lender's interest in Cash Collateral the Debtor requests this Court's authorization to utilize Lender's Cash Collateral to pay ordinary operating expenses and maintain the Hotel.

29.     It is the Debtor's burden of proof to show adequate protection.  The burden of proof is by a preponderance of the evidence.  See, §363(p) of the Bankruptcy Code.  In re Glastream Boats, Inc., 110 B.R. 611 (Bankr. M.D. Ga. 1990); Grogan v. Gamer, 498 U.S. 279 (1991).  In the instant case, the Debtor will be able to demonstrate based upon the above detailed factors that Lender will be adequately protected.

30.     The Debtor believes that Lender is adequately protected based upon an equity cushion.  The Property was appraised at the time of the acquisition at $94,100,000 apportioned $54,800,000 to the Hotel and $39,300,000 to Residential.  Certainly the COVID-19 pandemic has resulted in a temporary decrease in the Property value.  However, the Debtor is hopeful that the roll out of the various vaccines to fight COVID-19 will result in increased travel by the

public and allow the Debtor to again implement dining and business center services, resulting in

a turnaround of the losses suffered by the hospitality industry generally and this Debtor

specifically. This in turn will result in an increase in Hotel occupancy rates and an eventual

return of full equity in the Property based upon the acquisition value. Numerous courts have

held the existence of an equity cushion, in and of itself, constitutes adequate protection for an

over-secured creditor. See, In re Mellor, 734 F.2d. 1396 (9th Cir. 1984); ln re Shapiro, 109 B.R.

127 (Bankr. E.D. PA. 1990) (30% equity cushion was sufficient to adequately protect secured

creditors).

31.     The Debtor believes even in light of the temporary possible impairment of value

resulting from the COVID-19 pandemic, that this is an equity cushion sufficient to adequately

protect the Lender and that the end of the pandemic signals the ability of the Debtor to return to

the profitability it enjoyed from the acquisition date until the pandemic.

## REQUEST FOR FINAL HEARING

32.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor requests that

the Court set a date that is no later than 14 days after entry of the interim order as a final hearing

for consideration of entry of the Final Order.

33.     The Debtor requests that it be authorized to serve a copy of the signed interim

order, which fixes the time and date for the filing of objections, if any, by first class mail upon

the Notice Parties listed below. The Debtor further requests that the Court consider such notice of

the Final Hearing to be sufficient notice under Bankruptcy Rule 4001(c)(2).

## NOTICE

34.     Notice of this Motion has been provided to (i) the Office of the United States

Trustee; (ii) counsel for the Lender (iii) the holders of the twenty (20) largest unsecured claims

against the Debtor; and (iv) all parties who have filed appearances in this case and requests for

notices.  The Debtor submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

35.    No previous request for the relief sought herein has been made by the Debtor to this or any other Court.


**WHEREFORE**, the Debtor seeks the entry of an Order authorizing the Debtor to use Cash Collateral for the purpose of paying ordinary and necessary operating expenses and granting the Lender adequate protection, scheduling a final hearing in accordance with Federal Rule of Bankruptcy Procedure 4001 and such other and further relief as may be just and proper.


Dated: New York, New York
       December 20, 2020

                                              ROBINSON BROG LEINWAND GREENE
                                              GENOVESE & GLUCK P.C.
                                              Proposed Attorneys for the Debtor
                                              and Debtor-in -Possession
                                              875 Third Avenue, 9th Floor
                                              New York, New York 10022
                                              (212) 603 6300


                                              By: /s/ Fred B. Ringel
                                               Fred B. Ringel, Esq.
                                               .

# Exhibit A

**The Tillary Hotel Brooklyn**
**85 Flatbush RHO Hotel LLC**
**13 week budget - Cash Collateral Motion**

| | Dec-20 PTD | % | Jan-21 PTD | % | Feb-21 PTD | % | Mar-21 PTD | % |
|---|---|---|---|---|---|---|---|---|
| Number of Rooms | 174 | | 174 | | 174 | | 174 | |
| Days | 31 | | 31 | | 28 | | 31 | |
| Available Rooms | 5,394 | | 5,394 | | 4,872 | | 5,394 | |
| Occupied Rooms | 800 | | 800 | | 800 | | 800 | |
| Occupancy Percent | 25.00% | | 20.00% | | 15.00% | | 15.00% | |
| Average Daily Rate | $130.12 | | $130.12 | | $130.12 | | $130.12 | |
| RevPAR | $32.53 | | $26.02 | | $19.52 | | $19.52 | |
| **Revenue** | | | | | | | | |
| Rooms | $87,733 | 100.00% | $140,373 | 100.00% | $95,092 | 100.00% | $105,280 | 100.00% |
| Food & Beverage | $0 | 0.00% | $0 | 0.00% | $0 | 0.00% | $0 | 0.00% |
| Rental & Other Income | $0 | 0.00% | $0 | 0.00% | $0 | 0.00% | $0 | 0.00% |
| **Gross Revenue** | **$87,733** | **100.00%** | **$140,373** | **100.00%** | **$95,092** | **100.00%** | **$105,280** | **100.00%** |
| **Department Expenses** | | | | | | | | |
| Rooms | $33,181 | 37.82% | $53,090 | 37.82% | $35,964 | 37.82% | $39,818 | 37.82% |
| Food & Beverage | $0 | 0.00% | $0 | 0.00% | $0 | 0.00% | $0 | 0.00% |
| **Total Departmental Expenses** | **$33,181** | **37.82%** | **$53,090** | **37.82%** | **$35,964** | **37.82%** | **$39,818** | **37.82%** |
| **Profit** | | | | | | | | |
| Rooms | $54,552 | 62.18% | $87,283 | 62.18% | $59,127 | 62.18% | $65,463 | 62.18% |
| Food & Beverage | $0 | 0.00% | $0 | 0.00% | $0 | 0.00% | $0 | 0.00% |
| Rentals & Other Income | $0 | 0.00% | $0 | 0.00% | $0 | 0.00% | $0 | 0.00% |
| **Gross Operated Income** | **$54,552** | **62.18%** | **$87,283** | **62.18%** | **$59,127** | **62.18%** | **$65,463** | **62.18%** |
| **Undistributed Expenses** | | | | | | | | |
| Administrative and General | $17,440 | 19.88% | $27,903 | 19.88% | $18,902 | 19.88% | $20,927 | 19.88% |
| Information & Telecom | $5,165 | 5.89% | $8,263 | 5.89% | $5,598 | 5.89% | $6,198 | 5.89% |
| Sales & Marketing | $4,730 | 5.39% | $7,568 | 5.39% | $5,126 | 5.39% | $5,676 | 5.39% |
| Property Operations & Maintenance | $10,092 | 11.50% | $16,147 | 11.50% | $10,938 | 11.50% | $12,110 | 11.50% |
| Utility Costs | $7,200 | 8.21% | $11,519 | 8.21% | $7,804 | 8.21% | $8,640 | 8.21% |
| **Total Undistributed Expenses** | **$44,625** | **50.86%** | **$71,400** | **50.86%** | **$48,368** | **50.86%** | **$53,550** | **50.86%** |
| **Gross Operating Profit** | **$9,927** | **11.31%** | **$15,883** | **11.31%** | **$10,759** | **11.31%** | **$11,912** | **11.31%** |
| Independent Director Fee | $0 | 0.00% | $0 | 0.00% | $3,500 | 3.68% | $0 | 0.00% |
| Bankruptcy Management Fee | $5,000 | 5.70% | $5,000 | 3.56% | $5,000 | 5.26% | $5,000 | 4.75% |
| **Income Before Fixed Charges** | **$4,927** | **5.62%** | **$10,883** | **7.75%** | **$5,759** | **6.06%** | **$6,912** | **6.57%** |
| **Fixed Charges** | | | | | | | | |
| Rent | $0 | 0.00% | $0 | 0.00% | $0 | 0.00% | $0 | 0.00% |
| Property & Other Taxes | $0 | 0.00% | $0 | 0.00% | $0 | 0.00% | $0 | 0.00% |
| Total Insurance | $16,631 | 18.96% | $16,631 | 11.85% | $16,631 | 17.49% | $16,631 | 15.80% |
| Other Non-Operating Expense | $0 | 0.00% | $0 | 0.00% | $0 | 0.00% | $0 | 0.00% |
| **Total Fixed Charges** | **$16,631** | **18.96%** | **$16,631** | **11.85%** | **$16,631** | **17.49%** | **$16,631** | **15.80%** |
| **EBITDA** | **($11,704)** | **-13.34%** | **($5,748)** | **-4.09%** | **($10,872)** | **-11.43%** | **($9,719)** | **-9.23%** |